UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

STEPHON PEAKE                                                                    PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:23-cv-240-DPJ-ASH

WARDEN UNKNOWN COLBERT, ET AL.                                    DEFENDANTS

REPORT AND RECOMMENDATION

This case is before the Court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [53]. Pro se Plaintiff Stephon Peake filed a response [60] in opposition, and Defendants filed a reply [65]. Having considered this matter, the undersigned recommends that Defendants' request for dismissal based on failure to exhaust be granted and that this case be dismissed without prejudice. Alternatively, the undersigned recommends that Defendants' request for dismissal be granted and that this case be dismissed with prejudice because Peake fails to state a viable *Bivens* claim or a viable constitutional claim concerning transfer.

I.      Background

Peake is a prisoner currently incarcerated at the Federal Correctional Institution Berlin in Berlin, New Hampshire. Peake filed his Complaint on April 7, 2023. He sues Defendants Warden D. Colbert and Captain Brown in this *Bivens* action.[1] Am. Compl. [8] at 1–3. Because Peake is a prisoner and was granted permission to proceed in forma pauperis (IFP), *see* Order [17], his Complaint is subject to the Prison Litigation Reform Act (PLRA).

---

[1] The United States Supreme Court in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), recognized that an individual under certain circumstances may maintain a private cause of action against federal officials.

Peake alleges that on December 31, 2022, after returning from the hospital after surgery for a dislocated shoulder sustained during a riot at the Yazoo City Federal Correctional Complex, he was housed in the Special Housing Unit (SHU) from December 31, 2022, until July 6, 2023. Am. Compl. [8] at 5–10; Am. Compl. [24] at 2. In January 2023, Peake and Defendant Brown "had some words where Brown grew irate with Peake." Am. Compl [22] at 1.  Peake says that he "understands that his stay in the SHU from December 31, 2022 till March 24, 2023 was justified despite his [belief that his] place to recover from surgery could have been more reasonable or suitable." Am. Compl. [24] at 1–2. But he claims that he was falsely imprisoned in the SHU from March 24, 2023, until July 6, 2023. *Id*. at 2. He contends he was "false[ly] imprisoned by Captain Brown and Warden D. Colbert as an act of retaliation and a violation of [his] 8th Amendment" right. Am. Compl. [19] at 1. Peake also complains that his transfer to another facility was denied. Am. Comp. [22] at 1; Am. Compl. [24] at 2. Then on October 24, 2023, while Peake was being held in a holding cage, Defendant Brown and Peake exchanged words. Am. Compl. [19] at 2. Peake states that he "began cursing Captain Brown with his face pressed up against the cage and Captain Brown hit the cage with . . . [his] fist where Peake[']s mouth was located causing the cage to hit Peake in the mouth busting the inside of his lip." *Id*. Finally, Peake contends that Defendant Colbert "failed to hold Brown accountable but instead has assisted [with] these violations on Peake's well being." Am. Compl. [24] at 3. As relief, Peake seeks monetary damages. Am. Comp. [8] at 5; Am. Compl. [24] at 1.

II.      Standard

Defendants have submitted matters outside the pleadings with their Motion to Dismiss or, in the Alternative, for Summary Judgment [53]. Indeed, they specify in the title and in the body of their brief that they are seeking summary judgment on the exhaustion issue and that their

challenge to the *Bivens* claim is to its legal viability. Accordingly, their Motion [53] will be characterized as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991).

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 633 (5th Cir. 1999) (quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir. 1998)). Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Id.* The court does not, "however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted). Moreover, the nonmovant's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The nonmovant must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. If contradictory

3

facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014). But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little*, 37 F.3d at 1075.

These same summary-judgment rules apply to pro se parties. While the Court will liberally construe pro se arguments, a pro se nonmovant must offer evidence showing a genuine issue of material fact to defeat a motion for summary judgment. *Baughman v. Seale*, 761 F. App'x 371, 378 (5th Cir. 2019).

Summary judgment may be an appropriate vehicle to decide whether a prisoner completed pre-filing exhaustion in cases relating to the conditions-of-confinement claims. *See, e.g.*, *Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir. 2015) ("[T]here is no genuine issue of material fact as to whether Wilson exhausted his administrative remedies, and summary judgment was appropriate."); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010) ("[E]xhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time . . . ."). If the defendant meets his "initial summary judgment burden of showing that there [is] no genuine issue of material fact regarding exhaustion" and plaintiff "fail[s] to come forward with specific facts showing there [is] a genuine dispute as to exhaustion, the district court [is] required to dismiss his claims." *Jackson v. Hall*, 763 F. App'x 376, 376–77 (5th Cir. 2019) (affirming summary judgment dismissal for failure to exhaust administrative

remedies, noting that district court did not err by ruling on prisoner's claims in the context of summary judgment without allowing discovery or conducting an evidentiary hearing).

III.    Analysis

A.    Peake's Failure to Exhaust Administrative Remedies

Statutory and case law require a prisoner to exhaust administrative remedies, regardless of the relief sought, before filing a *Bivens* action in federal court. 42 U.S.C. § 1997(e); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Zebrowski v. U.S. Fed. Bureau of Prisons*, 558 F. App'x 355, 359 (5th Cir. 2014); *Schipke v. Van Buren*, 239 F. App'x 85, 86 (5th Cir. 2007) (explaining the exhaustion requirement applies to *Bivens* actions). The relevant portion of 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 (PLRA), states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). In *Booth v. Churner*, the Supreme Court held that § 1997e, as revised by the PLRA, requires an inmate to exhaust administrative remedies before bringing an action with respect to prison conditions, regardless of the relief offered through administrative procedures. 532 U.S. 731, 739–41 (2001). The Supreme Court also explained that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life—whether involving general circumstances, particular episodes, excessive force, or some other wrong. *Porter*, 534 U.S. at 532; *see also Jones v. Bock*, 549 U.S. 199 (2007) (reaffirming that exhaustion is mandatory; stating that it is an affirmative defense).

The United States Court of Appeals for the Fifth Circuit has reiterated the principles found in these cases. In *Gonzales v. Seal*, the Fifth Circuit recognized that exhaustion of administrative remedies before suit is mandatory, and that district courts have no discretion to

stay prisoner cases when they are filed before prisoners have exhausted administrative remedies.

702 F.3d 785 (5th Cir. 2012). The Fifth Circuit concluded:

> District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Id.* at 788. "It is well-established that a prisoner must properly complete the exhaustion of available administrative remedies prior to filing his complaint." *Schubert v. Avery*, No. 3:22-cv-321-HTW-LGI, 2023 WL 8534634, at *2 (S.D. Miss. June 6, 2023) ("Pre-filing exhaustion is mandatory." (quoting *Gonzalez*, 702 F.3d at 788)), *report and recommendation adopted*, 2023 WL 8530583 (S.D. Miss. Dec. 8, 2023). A prisoner's grievance must be specific enough to provide officials with "a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).

The PLRA dictates *proper* exhaustion, meaning that "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Jones*, 549 U.S. at 218); *see also Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them."). The "exhaustion requirement is satisfied only if the prisoner 'pursue[s] the grievance remedy to conclusion.'" *Wilson*, 776 F.3d at 301 (quoting *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

In support of their summary judgment motion, Defendants submitted a Declaration from Amy Landers, Paralegal at the Federal Correctional Complex in Yazoo City. Decl. [53-1] at 1. Landers's Declaration states that she is the custodian of the documents or is otherwise qualified

6

to execute this certification about the grievances Peake filed through the Bureau of Prisons'

(BOP) Administrative Remedy Program. *Id.* Landers states that Peake filed a total of thirty-seven

administrative grievances while in BOP custody. Decl. [53-1] at 2 ¶ 12; Attach. B [53-3] at 1–17.

As explained below, none of those grievances exhausted the claims he pursues here.

The BOP's regulations provide for a multiple-step Administrative Remedy Program

(ARP) that "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her

own confinement." 28 C.F.R. § 542.10; *see generally id.* §§ 542.10–542.19 (Subpart B,

Administrative Remedy Program). To begin the process, "an inmate shall first present an issue of

concern informally to staff." *Id.* § 542.13. If informal resolution does not address the inmate's

concerns, within "20 calendar days following the date on which the basis for the Request

occurred," the inmate must file "a formal written Administrative Remedy Request, on the

appropriate form (BP-9)." *Id.* § 542.14(a). Once a BP-9 is filed, "response shall be made by the

Warden . . . within 20 calendar days." *Id.* Next, "[a]n inmate who is not satisfied with the

Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate

Regional Director within 20 calendar days of the date the Warden signed the response." *Id.*

§ 542.15(a). The Regional Director then has 30 calendar days to respond, *id.* § 542.18, and "[a]n

inmate who is not satisfied with the Regional Director's response may submit an Appeal on the

appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the

Regional Director signed the response," *id.* § 542.15(a). The General Counsel has 40 calendar

days to respond to the BP-11. *Id.* § 542.18

Of the grievances Peake filed, Lander's Declaration points out that there were only three

that "possibly relate to the issue raised in his lawsuit," which "are referenced at Remedy

Identification numbers: 10330771-F1, 1130769-R1 & 1164353-R1." Decl. [53-1] at 3 ¶ 13.

7

Along with an explanation of remedies and the codes, Landers attaches to her declaration copies of the abstract of these administrative remedies. Attach. B [53-3] at 4, 7, 12. In Remedy Identification number 10330771-F1, Peake filed his administrative remedies request with the warden at the institutional level, but it was rejected for deficiencies. Decl. [53-1] at 3 ¶ 14. Peake failed to correct these deficiencies and properly refile his request. *Id*. In Remedy Identification number 1130769-R1, the BOP rejected Peake's administrative remedy request because he filed at the wrong level of review—the regional level rather than first filing it at the institutional level. *Id*. at ¶ 15. Peake pursued neither request to completion. Additionally, these two requests could not have exhausted Peake's claims because they were filed in July 2020 and August 2022—before the incidents occurred that Peake raises in this lawsuit. *See* Attach. B [53-3] at 4 (received July 1, 2020) & 7 (received August 16, 2022). As to the third one, Remedy Identification number 1164353-R1, the BOP rejected this administrative remedy request because Peake filed it directly at the regional level before first filing it with the warden at the institution. Decl. [53-1] at ¶ 16. Peake submitted this request on April 10, 2023, which was *after* Peake filed this civil action. Attach. B [53-3] at 12 (received April 10, 2023).

Peake responds that "he was having problems obtaining the forms to exhaust his administrative remedies." Resp. [60] at 5. He adds that he did not "have access to an ink pen, their law library, or a copy machine, and all the documents he would attempt to file would come up missing or couldn't get responded to at all." *Id*. Peake argues that "exhaustion is not required if [he] can make a showing that he was unable to file a grievance through no fault of his own." *Id*. at 6.

In their Reply, Defendants argue that Peake's response is premised on conclusory allegations that they are insufficient to establish that administrative remedies were unavailable.

Reply [65] at 1. Defendants also point out that "Peake's administrative remedy history shows that he has filed 32 administrative requests" and that seven of those were filed during the time he alleges he was in SHU, which also "includes the period at issue in his Complaint." *Id*. at 2; Attach. B [53-3] at 10–13. Defendants conclude that "any claim that the administrative remedy process is futile or was wholly unavailable to Peake is directly contradicted by his administrative remedy history." *Id*.

"A prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Jackson v. Blackman,* No. 3:16-cv-752-DPJ-FKB, 2018 WL 847117, at *1 (S.D. Miss. Feb. 13, 2018) (quoting *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006)) (cleaned up). Simply put, exhaustion is not complete until the prisoner pursues the administrative remedy "to conclusion." *Wilson*, 776 F.3d at 301.

There is no genuine dispute that Peake failed to complete the ARP process for the incidents raised in this civil action that occurred from December 31, 2022, to April 7, 2023—the date he filed his lawsuit. Peake's claim that the ARP process was unavailable to him because of difficulty accessing the forms is wholly conclusory and, more importantly, contradicted by his ARP record. As evidenced by Peake filing seven administrative remedy requests *while he was in the SHU* in the first half of 2023, the administrative remedy process was neither futile nor unavailable to him. His unsubstantiated claims to the contrary are insufficient to create a fact question. Additionally, Peake could not have exhausted his claims for incidents that occurred *after* April 7, 2023, including the excessive use of force incident on October 24, 2023, because that was the date he commenced this civil action.

"Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzales*, 702 F.3d at 788. Peake was required to complete the BOP's ARP process before filing suit, but he failed to do so. Accordingly, because the undisputed facts show that Peake failed to exhaust his administrative remedies before filing this case, the undersigned recommends that Peake's complaint be dismissed without prejudice for failure to exhaust his administrative remedies.

**B.  Alternative Grounds for Dismissal**

Even if the Court were to excuse Peake's failure to exhaust, summary judgment would still be proper as to each of his claims. As explained below, the undersigned alternatively recommends that the Court grant Defendants' Motion [53] and dismiss the case with prejudice. *See, e.g.*, *Canada v. United States*, 950 F.3d 299, 302, 312 (5th Cir. 2020) (affirming a dismissal with prejudice where there was no cause of action under *Bivens*).

**1.    Peake's *Bivens* Claims**

Starting with his claimed constitutional violations, Peake does not have a viable cause of action under *Bivens*. In *Bivens*, the Supreme Court recognized an implied cause of action against federal officers in their individual capacities involving a Fourth Amendment claim for unreasonable search and seizure. *Bivens*, 403 U.S. at 397. Since that decision, the Supreme Court has acknowledged a *Bivens* claim for only two other implied causes of actions. In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court recognized a *Bivens* claim for violations of the Fifth Amendment Due Process Clause for gender discrimination. Then in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court extended *Bivens* to a federal prisoner's Eighth Amendment claim for inadequate medical care resulting in the prisoner's death. Importantly, "a

*Bivens* remedy is not available for all constitutional violations." *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017).

Just last year, the Supreme Court again declined to extend *Bivens* to include an implied cause of action for damages based on an excessive-force claim under the Eighth Amendment. *Goldey v. Fields*, 606 U.S. 942 (2025) (per curiam). The Supreme Court stated that it "has repeatedly emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Id*. at 944 (quoting *Egbert v. Boule*, 596 U.S. 482, 492 (2022)) (cleaned up). That said, the Supreme Court once again applied a two-step test to determine whether a *Bivens* claim may proceed. *Id.*

First, the court asks "whether the case presents 'a new *Bivens* context'—that is, whether the case 'is different in a meaningful way' from the cases in which this Court has recognized a *Bivens* remedy." *Id.* (citations omitted). Second, if it is a new context, then the court "ask[s] whether there are 'special factors' indicating that 'the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (quotation omitted) (cleaned up).

Applying the two-step test, Peake's allegations that (1) he was unlawfully housed in the Special Housing Unit (SHU) from March 24, 2023, until July 6, 2023, as acts of retaliation and in violation of his Eighth Amendment rights; and (2) the inside of his lip was burst because of excessive use of force by Defendant Brown are different in "meaningful ways" from the issues in the three cases recognizing a *Bivens* implied cause of action. This is clearly a new context for purposes of *Bivens*. *See Goldey*, 606 U.S. at 944 (declining to extend *Bivens* cause of action for excessive use of force in violation of the Eighth Amendment); *see also Butler v. S. Porter*, 999

F.3d 287, 294 (5th Cir. 2021) (affirming the district court determining that retaliation claims are a new context under *Bivens*).

Because Peake's claims arise in a new context, the next step is to determine "whether there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Goldey*, at 944 (quotations omitted) (cleaned up). There are two "special factors" that counsel against extending *Bivens* here. One is that "Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages." *Id.* (citing *Ziglar v. Abbasi*, 582 U.S. 120, 148–49 (2017)). "This Congressional inaction counsels against judicial creation of such a remedy that the legislature has not seen fit to create." *Dudley v. United States*, No. 4:19-cv-317-O, 2020 WL 532338, at *7 (N.D. Tex. Feb. 3, 2020). Along these lines, the Fifth Circuit has concluded that "[w]hether and to what extent *Bivens* extends" to a prisoner's Eighth Amendment condition-of-confinement claim "is an issue best left for Congress to address." *Springer v. United States*, No. 21-11248, 2022 WL 2208516, at *1 (5th Cir. June 21, 2022).

The other special factor is whether "there are alternative remedial structures in place." *Egbert*, 596 U.S. at 493. This factor "alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* (quoting *Ziglar*, 582 U.S. at 137). "The existence of such alternative remedial procedures counsels against allowing *Bivens* suits even if such procedures are not as effective as an individual damages remedy." *Goldey*, 606 U.S. at 944–45 (quoting *Egbert*, 596 U.S. at 498) (cleaned up). "[T]he alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would." *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) (rejecting argument that the Federal Tort Claims Act

provided an insufficient alternative remedy because "Congress did not make individual officers statutorily liable for excessive-force claims" and finding "[t]his 'silence of Congress is relevant' to the special-factors inquiry").

The existence of the BOP's administrative remedy program, *see* 28 C.F.R. § 542.10(a), demonstrates that there is an alternative remedial structure in place. That alone counsels against the extension of *Bivens* here. *See Watkin v. Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (recognizing that an alternative method of relief for a *Bivens* action is the BOP's Administrative Remedy Program). Also, under the Federal Tort Claims Act, a federal prisoner may sue for injuries received during incarceration.[2] *Id*. (citations omitted).

### 2.    Peake's *Respondeat Superior* Claim against Colbert

Peake also cannot maintain a *Bivens* action against Defendant Colbert for the actions of his subordinate, Defendant Brown. "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Ziglar*, 582 U.S. at 141; *see also id.* ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662-76 (2009))). As discussed above, Peake's claims that he was retaliated against by Defendants Brown and Colbert, and that Defendant Brown used excessive force involve a new *Bivens* context. *See Hernandez v. Causey*, 124 F.4th 325, 333 (5th Cir. 2024) ("Outside of these three narrowly defined categories" in *Bivens*, *Davis*, and *Carlson*, "[v]irtually everything else is a 'new context.'" (quoting *Oliva*, 973 F.3d at 442). But even if that were not the case, Peake cannot pursue a claim against Colbert based on Brown's actions under a theory of *respondeat superior*.

---

[2] *See* 28 U.S.C. §§ 1346(b)(1), 2679(b)(1) (providing that a person may pursue tort claims that arise from the negligent or wrongful acts or omissions of federal employees in the course of their employment).

3.      Peake's Denial-of-Transfer Claims

As for Peake's assertion that he was wrongfully denied a transfer to another facility, this claim fails to state a plausible constitutional claim. Peake does not have a "constitutional right to be incarcerated in the facility of his choice." *Thomas v. Pearson*, 342 F. App'x 21, 22 (5th Cir. 2009) (citing *Olim v. Wakinekona*, 461 U.S. 238, 244–46 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996)). To the extent that Peake claims that Defendants Brown and Colbert failed "to comply with regulations" concerning his transfer, this "likewise does not raise a viable constitutional claim." *Id*. (citing *Jackson v. Caine*, 864 F.2d 1235, 1251-52 (5th Cir. 1989)). This includes claims, like Peake's, that officials failed "to comply with the pertinent statute when considering [a prisoner's] request for transfer." *Id.* This "does not involve an infringement of his constitutional rights." *Id*.

III.    Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' Motion [53] be granted based on Peake's failure to exhaust his administrative remedies and this action be dismissed without prejudice. Alternatively, if the Court determines that the exhaustion requirement has been met, the undersigned recommends that Defendants' Motion be granted and this civil action dismissed with prejudice because Peake fails to state a viable *Bivens* claim or a viable constitutional claim for denial of his transfer request.

IV.     Notice of Right to Object

In accordance with the Rules of this Court, any party may serve and file written objections to the recommendations, with a copy[3] to the United States District Judge, the

---

[3] When a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).

Magistrate Judge, and the opposing party, within fourteen days after being served a copy of this recommendation. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained within this report and recommendation will bar that party from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court, except on the grounds of plain error. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

RESPECTFULLY SUBMITTED, this 20th day of May, 2026.

 *s/Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE